## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**LUTHER W. CUMMINGS,**

      **Plaintiff,**

**vs.**                        **Case No.  1:17cv160-MW/CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Act and an application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On November 8, 2013, Plaintiff, Luther W. Cummings, filed applications for SSI and a period of disability and DIB, respectively, alleging disability beginning June 1, 2011, based on scoliosis, heart attacks (stent in heart), knee impairments (both knees swollen), osteoporosis, breathing problems, left eye vision problems, and mental stress.  Tr. 32, 36, 101-02, 256-68, 278, 283, 357, 362.[1]  Plaintiff last met the insured status requirements for DIB on December 31, 2016.[2]  Tr. 32, 337, 358.  (The ALJ noted: "The claimant filed prior applications for benefits under Titles II and XVI on May 23, 2013, which are not being reopened."  Tr. 32; *see also* Califano v. Sanders, 430 U.S. 99, 107-09 (1977).  This determination is not the subject of review in this case.)

---

[1]  Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.  At hearing, Plaintiff amended his onset date to July 12, 2012, which corresponds to the consultative examination report submitted by Robert A. Greenberg, M.D., on July 18, 2012.  Tr. 36, 58, 396-400.  Plaintiff explained that he was unable to work on July 12, 2012, because he "had started hurting.  Back problem and then knee problem all the way to [his] foot and [he] barely can move around."  Tr. 60.

[2]  To be eligible for DIB, a claimant must establish a disability prior to the expiration of her insured status, here, December 31, 2016.  Tr. 358; *see* Moore v. Barnhart, 405 F. 3d 1208, 1211 (11th Cir. 2005).  For SSI claims, the relevant period is the month in which Plaintiff filed her SSI application, here November 8, 2013, to the date of the ALJ's decision, March 4, 2016.  *See* 20 C.F.R. § 416.501; Moore, 405 F.3d at 1211.

Plaintiff's applications were denied initially on February 21, 2014, and upon reconsideration on May 20, 2014.  Tr. 32, 155-60, 164-73.  On June 17, 2014, Plaintiff requested a hearing.  Tr. 32, 174-75.  The video hearing was held on February 4, 2016, before Administrative Law Judge (ALJ) Kelley Fitzgerald who presided from Jacksonville, Florida.  Tr. 32, 55-67, 71-80.  Plaintiff was represented by Pamela Dunmore, an attorney, who appeared with Plaintiff in Gainesville, Florida.  Tr. 32, 55.  Plaintiff testified during the hearing.  Tr. 59-77.  Donna P. Mancini, an impartial vocational expert, testified briefly during the hearing.  Tr. 32, 67-71, 78-89, 389-90 (Resume).

On March 4, 2016, the ALJ issued a partially favorable decision and determined that Plaintiff was not disabled prior to February 15, 2015, the date Plaintiff's age category changed, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. Tr. 46.

On April 12, 2016, Plaintiff's representative requested review of the ALJ's decision.  Tr. 27.  Plaintiff asked "the Appeals Council to reverse the ALJ's partially favorable decision to the extent of finding the claimant disabled and entitled to disability insurance benefits beginning July 2, 2012 [,] through February 14, 2015.  There is no competent substantial evidence

to support the ALJ's finding that the claimant was not disabled from July 2, 2012 [,] through February 14, 2015." *Id.* On March 22, 2017, the Appeals Council notified Plaintiff's representative that it granted the request for review. Tr. 250. The Appeals Council indicated that it planned "to make a decision finding [Plaintiff] became disabled on August 15, 2015." Tr. 251. The Appeals Council explained the bases for its intended action, which was to ultimately find that Plaintiff became disabled on August 15, 2015, the day before when Plaintiff's 55th birthday for DIB and SSI benefits, rather than February 15, 2015, when Plaintiff was 54½ years old. Tr. 251, 254. Plaintiff was afforded the opportunity to provide the Appeals Council with additional information within 30 days. Tr. 254. No additional information was provided.

On April 27, 2017, the Appeals Council entered a decision that was partially favorable to Plaintiff. Tr. 7-17. The Appeals Council agreed with and adopted the ALJ's findings under steps one through four of the five-step sequential evaluation process discussed below. Tr. 12. Importantly, the Appeals Council did "not adopt the finding of the hearing decision, that the claimant's age category changed to that of advanced age, on February 15, 2015" and explained the reasons for this conclusion. Tr. 13 (citations omitted). Rather, the Appeals Council determined that Plaintiff was

disabled beginning August 15, 2015, and awarded DIB and SSI benefits from that day forward and denied benefits prior to that date.  Tr. 13.

On June 26, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the decisions rendered by the ALJ and Appeals Council.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 16 and 17, which have been considered.

## II. Findings of the ALJ

The ALJ and the Appeals Council made several findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016. Tr. 13, 34.

2. The claimant has not engaged in substantial gainful activity since the amended alleged onset date of July 12, 2012.  *Id.*

3. The claimant has the following severe impairments: heart disease, disorders of the spine, disorders of the left knee, and obesity.  *Id.* The ALJ determined further that Plaintiff's history of gastroesophageal reflux disease (GERD) did not impose more than a minimal limitation on Plaintiff's ability to perform basic work activities and was non-severe.  Tr. 35.

4. Since the amended alleged onset date of disability, July 12, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 14, 35.

5. Unlike the ALJ who determined Plaintiff had the residual functional capacity [RFC] "to perform light work" with limitations, Tr. 35, the Appeals Council determined that Plaintiff had the RFC "to perform a reduced range of light exertional work" with the same limitations, Tr. 14.  Plaintiff is capable of lifting/carrying up to 10 pounds

frequently and 20 pounds occasionally; sitting about six hours in an eight-hour workday; standing and walking about six hours each in an eight-hour workday; no more than frequent climbing of ramps and stair[s] and balancing; no more than occasional stooping, kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds; and no concentrated exposure to extreme cold or hazards (machinery, heights, etc.).

Tr. 14, 35.

6.  The claimant is unable to perform any past relevant work, which included *clean-up worker*, medium exertional level, an SVP of 2 per the Dictionary of Occupational Titles (DOT) and as performed and *stock clerk*, heavy exertional level, with an SVP of 4 per the DOT and an SVP of 2 as performed.  Tr. 14, 44.

7.  The ALJ and the Appeals Council differed in their approach to claimant's age.  Tr. 14, 44.  The ALJ determined that "[p]rior to the established disability onset date, the claimant was an individual closely approaching advanced age" and that "[a]pplying the age categories non-mechanically, and considering the additional adversities in this case, on February 15, 2015, the claimant's age category changed to an individual of advanced age."  Tr. 44.  The Appeals Council ultimately determined that Plaintiff "is an individual closely approaching advanced age, with a limited 11th grade education, through August 14, 2015."[3]  Tr. 14.

8.  The ALJ determined that "[p]rior to February 15, 2015, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.  Beginning on February 15, 2015, the claimant has not been able to transfer

---

[3]  "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. § 404.1563(d).  "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.  We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement (age 60 or older).  See § 404.1568(d)(4)."  20 C.F.R. § 404.1563(e).

job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Tr. 44. The ALJ further determined that Plaintiff had no transferable skills. Tr. 45.

The Appeals Council determined:

8. Using Medical-Vocational Rule 202.11 (Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2) as a framework for decision making, the Appeals Council finds that, from the alleged onset date of July 12, 2012 [,] through August 14, 2015, for purposes of both Title II and Title XVI, the claimant was not under a 'disability' because of the ability to perform work in the significant numbers of jobs in the national economy.

9. Medical-Vocational Rule 202.02 directs a finding that the claimant became disabled on August 15, 2015 (the day before his 55th birthday), the date he turned 55 years of age, for purposes of his Title II and Title XVI claims.

Tr. 14; *see* Tr. 45 for the ALJ's discussion of Rule 202.11.

9. At step 5 of the sequential evaluation process, the ALJ determined that "[p]rior to February 15, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed." Tr. 45. As noted above, the ALJ determined that prior to February 15, 2015, not as determined by the Appeals Council prior to August 15, 2015,[4] the Plaintiff had the RFC to perform the full range of light work with limitations. The ALJ added that Plaintiff's ability to perform all or substantially all the requirements

---

   [4]   During the hearing, the ALJ mentioned August 2015 when, after the vocational expert's testimony, Plaintiff's attorney inquired further of Plaintiff, Tr. 71, and toward the end of the hearing when Plaintiff's counsel inquired whether she needed to cover the question of transferability of skills "[a]nd closely approaching advanced age --" and the ALJ said "[n]o" "[as] of the -- August 2015." Tr. 78. The ALJ concluded the hearing by stating, in part, and apparently referring to a date of disability, that she would "definitely allow it as of February 2015 and possibly prior to that." Tr. 79. As noted above, the ALJ determined Plaintiff was disabled beginning on February 15, 2015, but not disabled prior to February 15, 2015. Tr. 46.

of this level work was impeded by additional limitations and to determine the extent to which these limitations eroded the unskilled light occupational base, the ALJ asked the vocational expert whether there were jobs in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC.  Considering these factors, the vocational expert testified that such a person, here Plaintiff, could perform the representative jobs of marker, cleaner, housekeeping, and router each at the light exertional level with an SVP of 2, or unskilled.[5,6]  Tr. 45, 70-71.

10.  The ALJ determined that Plaintiff was not disabled prior to *February 15, 2015*, but became disabled on that date and continued to be disabled through the date of the ALJ's decision, March 4, 2016.  Tr. 46.  The Appeals Council determined that Plaintiff was not disabled prior to *August 15, 2015*, (the day before Plaintiff's 55th birthday) but became disabled beginning on August 15, 2015, a six-month difference.  Tr. 14.  Plaintiff turned 55 years of age on August 16, 2015.  ECF No. 16 at 18.  In this case, Plaintiff claims the Appeals Council erred in denying Plaintiff benefits prior to August 15, 2015, but does not distinguish between that date and February 15, 2015.  *Id.*

---

[5]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[6]  The Appeals Council did not adopt the ALJ's determination that Plaintiff's age category changed, but adopted the ALJ's determination of the representative jobs that Plaintiff could perform as part of the ALJ's Finding 11, Tr. 45.  Tr. 13.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[7]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objectve medical facts or clinical findings; (2)

---

[7] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).  A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).[8]

Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if he is under a disability prior to the

---

[8]  The relevant DIB and SSI regulations are virtually identical.  As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.  The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A); <u>Moore v. Barnhart</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of Health & Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[9]

---

[9]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* <u>Cooper v. Astrue</u>, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered the decision.  *See generally* <u>Bagliere v. Colvin</u>, No. 1**:**16CV109,

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  <u>Phillips</u>, 357 F.3d at 1237; <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  <u>Phillips</u>, 357 F.3d at 1239-

---

2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

40; *see* 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner carries

this burden, the claimant must prove that he or she cannot perform the

work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's evaluation of the medical evidence, Plaintiff's report of pain, Plaintiff's RFC, and that he can perform representative jobs in the national economy.**

### A.

Plaintiff argues the ALJ, and necessarily the Appeals Council, erred

when denying Plaintiff disability benefits prior to age 55 because

substantial evidence does not support a finding that he is capable of

performing a full-time light work.[10]  ECF No. 16 at 18.

### B.

The ALJ began the RFC analysis with a discussion of the medical

evidence of record which begins on July 12, 2012, with the evaluation

---

[10]  As noted by the Commissioner, "Plaintiff does not raise or develop any argument specifically challenging the Appeals Council's finding that his age category did not change until August 15, 2015 [,] and, thus, has waived the issue."  ECF No. 17 at 5 n.4 (citations omitted).

report issued by Robert A. Greenberg, M.D., a State agency consultant.

Tr. 36, 396-400 (Exhibit 2F).[11]

> The medical evidence of record shows that, on July 12, 2012, Robert Greenberg, M.D., examined the claimant at the request of the State agency in connection with his prior claim for benefits (Exhibit 2F) [Tr. 396-400]. The claimant reported that he sustained multiple injuries in a motor vehicle accident in 2006, which resulted in ongoing, constant, severe pain in his knees, lumbar spine, hands, and hips. He stated that he was unable to afford prescription medications, so he took six over-the-counter Advil tablets daily and two BC Powders daily. He indicated that these provided him with little relief. The claimant also indicated that he began experiencing shortness of breath on exertion several years earlier despite never having smoked, but he did not take medications for his breathing difficulties. The claimant was 5'5" tall and weighed 244 pounds. His blood pressure was 139/80. His heart had a normal sinus rhythm with no murmurs, gallops, cyanosis, or evidence of cardiac enlargement on percussion. ["He has had a coronary stent." Otherwise, "his post medical history and review of systems is unremarkable." Tr. 386] There was decreased range of motion of the lumbar spine, both hips, and both knees; however, there was full range of motion of all other joints. There was severe pain on range of motion of the lumbar spine, hips, and knees, as well as pain on palpation of the knees and hips. There was no other evidence for active, inflammatory arthritis. Dr. Greenberg noted that the claimant walked with a very severe left leg limp, but he was able to do so without the use of any assisting device for ambulation. The claimant had difficulty walking on his heels, and he was unable to walk on his toes, tandem walk, or stoop. There was decreased strength in both legs, measuring 4/5. No other motor, sensory, or reflex

---

[11] Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a State agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review. *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017). The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings. *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

abnormalities were noted, and his grip strength and fine manipulation were normal. Straight leg raise was positive at 15 degrees bilaterally. Dr. Greenberg's diagnoses were severe osteoarthritis of the lumbar spine, hips, and knees as a result of previous injuries, aggravated by obesity; and shortness of breath, probably secondary to underlying cardiac disease, aggravated by morbid obesity [Tr. 397].

Tr. 36. After discussing other medical evidence, including Plaintiff's daily

activities, Tr. 36-40, the ALJ provided an extensive analysis of the

evidence.

First, I considered the medical evidence. *See* 20 CFR 404.1529(c)(2) and 416.929(c)(2). The claimant has been diagnosed with coronary artery disease and is status-post myocardial infarction and stent placement in 2006 after which he returned to work. During the period at issue, Dr. Greenberg's July 2012 consultative examination revealed a normal sinus rhythm with no murmurs, gallops, cyanosis, or evidence of cardiac enlargement on percussion (Exhibit 2F) [Tr. 396]. In October 2012, the claimant reported a two-month history of intermittent chest pain; however, a cardiovascular examination revealed a regular rate and rhythm with normal heart sounds, intact distal pulses, and no gallop, rub, or murmur (Exhibit 3F) [Tr. 403]. In addition, chest x-rays showed no acute cardiopulmonary abnormalities (Exhibit 3F) [Tr. 412]. There is no evidence of further complaints of chest pain until August 2013 when the claimant presented to the emergency room on two occasions with complaints of chest pain (Exhibits 4F [Tr. 424-26] and 5F [Tr. 480-84]). At the first visit, the claimant was examined and underwent testing (his EKG did not show any new ischemic changes and he had three sets of negative cardiac enzymes), and he was determined to have "non cardiac chest pain (GERD)" (Exhibit 4F) [*Id.*]. At the second visit, the claimant underwent stent placement after he was diagnosed with STEMI (Exhibit 5F) [Tr. 480]. He was determined to have a preserved LV function, and at discharge, a cardiovascular examination revealed a regular rate and rhythm with no murmurs, normal S1 and S2, and no

pitting edema (Exhibit 5F) [Tr. 480-81]. Subsequently, the claimant was seen in follow-up on two occasions (October 2013 and April 2014) at the UF Cardiology Clinic (Exhibits 6F [Tr. 544-46] and 8F [Tr. 554-60]). At these visits, the claimant denied any recurrence of angina, chest pain, nausea, diaphoresis, orthopnea, lightheadedness, dizziness, syncope, palpitations, edema, or PND (Exhibits 6F and 8F). His cardiovascular examinations at these visits revealed PMI in the usual position, apical pulse, and position normal; normal rate and rhythm; a normal S1 and S2; and no rubs, murmurs, or gallops (Exhibits 6F and 8F). Furthermore, Dr. Adhami's January 2014 consultative examination revealed regular heart sounds without clicks, gallops, or murmurs, and he indicated that the claimant had no current complaints of chest pains (Exhibit 7F) [Tr. 549-53].

The claimant has also been treated for low back pain and left knee pain, which he reported began after a motor vehicle accident in 2006, almost six years prior to his alleged onset date. During the period at issue, examinations revealed decreased range of motion of the back and left knee with pain at times; however, his sensation was consistently normal (Exhibits 3F). Dr. Greenberg's July 2012 consultative examination revealed positive straight leg raising and decreased strength in both legs (measuring 4/5), the remainder of the claimant's examinations showed normal strength in all extremities with negative straight leg raising [Tr. 396-97]. Furthermore, Dr. Greenberg was the only physician to indicate that the claimant had an antalgic gait (Exhibit 3F) [sic]. Nevertheless, he indicated that the claimant was able to ambulate without the use of an assistive device [Tr. 397] as did all of the other examining physicians that observed the claimant's gait (Exhibits 3F and 7F). In addition, x-rays of the left knee dated July 2012 and October 2012 show only mild degenerative changes, and October 2012 x-rays of the lumbar spine showed only mild to moderate degenerative and mild disc space narrowing at T12-Ll (Exhibits 1F [Tr. 395] and 3F [Tr. 410]). At the time of his two emergency room visits for chest pain in August 2013, the claimant denied back pain, a gait problem, musculoskeletal joint pain, or myalgias (Exhibits 4F [Tr. 425, 437-38, 442, 448, 454, 459] and 5F [Tr. 487, 491, 505]). His examinations during those visits revealed full range of motion of the upper and lower extremities bilaterally; 5/5 muscle strength in the shoulders,

elbows, wrists, hips, knees, and ankle joints bilaterally; and no focal neurologic deficits (Exhibits 4F [*Id.*] and 5F [*Id.*]). In October 2013, the claimant requested a refill of Norco for his back pain; however, the review of systems indicates that the claimant denied arthralgia, back pain, gait disturbance, myalgia, or joint swelling and no musculoskeletal or neurological abnormalities were noted on examination (Exhibits 6F [Tr. 544-46] and 8F [Tr. 555, 559]). Although the claimant complained of back pain and left knee pain at his January 2014 consultative examination, he had full range of motion of the back and left knee (Exhibit 7F) [Tr. 549-50]. In addition, the claimant had normal strength, sensation, and gait with no muscle spasms or muscle atrophy and negative straight leg raise (Exhibit 7F) [*Id.*]. In April 2014, the claimant complained of back pain and left knee pain and he had pain to palpation of the back, but a neurological examination revealed no focal findings or movement disorder and an examination of the extremities revealed no edema, redness, or tenderness in the calves or thighs (Exhibit 8F) [Tr. 554-55].

I considered the effects of the claimant's obesity according to Social Security Ruling 02-1p, which indicates that when a claimant has obesity as a severe impairment, an assessment should also be made of the effect obesity has on the individual's ability to perform routine movement and necessary physical activity. In this case, the claimant has been noted to be obese with a BMI ranging from 36.81 to 37.95 (Exhibits 2F, 6F, 7F, and 8F). His musculoskeletal examinations have generally been normal with the exception of some pain and decreased range of motion of the spine and left knee (Exhibits 2F, 3F, 4F, 5F, 7F, and 8F). In addition, her [sic] strength and sensation are normal with no evidence of muscle atrophy on examination. Dr. Greenberg indicated that the claimant's osteoarthritis of the lumbar spine, hips, and knees and his shortness of breath were aggravated by his obesity (Exhibit 2F) [Tr. 397], and Ms. Wright noted that the claimant had dyspnea on exertion because he was deconditioned and obese (Exhibits 6F and 8F). Therefore, the medical evidence shows that the claimant's limitations resulting from his obesity would only prevent him from doing more than the range of light exertional work activity set forth in the claimant's residual functional capacity determination.

I also considered other evidence of record in accordance with the regulations. *See* 20 CFR 404.1529(c)(3) and 416.929(c)(3). With regard to the claimant's treatment regimen, the claimant indicated in a pain questionnaire that his medications relieve his pain for a few hours without any noted side effects (Exhibit 5E) [Tr. 305]. At the hearing, the claimant testified that he has used a cane since October 2015 [Tr. 59]; however, I find that there is no evidence that an assistive device is medically necessary for the claimant to ambulate. The claimant testified that the assistive device was not prescribed by a physician [Tr. 60]. Furthermore, his examinations consistently reveal normal strength in his lower extremities despite his complaints of lower back and knee pain (Exhibits 2F, 3F, 4F, 5F, 7F, and 8F). Although the claimant testified that he has fallen approximately 10 times during the period at issue, the file does not document falls of such a frequency. In fact, the claimant sought treatment after a fall on only one occasion (in October 2012) (Exhibit 3F). At that time, a musculoskeletal examination revealed normal range of motion, and x-rays of the lumbar spine and left knee showed only mild to moderate degenerative changes [Tr. 404, 413-416].

Following his stent placement in August 2013, the claimant's treating cardiology providers prescribed medications, and they advised him to walk daily at least 30 minutes; apply for patient assistance; and quit smoking (Exhibits 5F, 6F, and 8F). In April 2014, the claimant told Dr. Anderson that he had done well from a cardiac standpoint since his last visit (Exhibit 8F) [Tr. 554]. At the hearing, the claimant testified that his energy level after his stent placement was good, and the limitations he reported with regard to activities of daily living were attributed to musculoskeletal issues, not cardiac-related symptoms.

The record shows that the claimant has not always followed his prescribed treatment regimen. In July 2012, he told Dr. Greenberg that he was unable to afford prescription medications, so he took six over-the-counter Advil tablets daily and two BC Powders daily, which provided him with little relief (Exhibit 2F) [Tr. 396]. In August 2013, Dr. Miles indicated that the claimant had been noncompliant with all his medications, including cardiac medications, for more than a year (Exhibit 4F). In August 2013, the claimant stated that he took no

medications because he did not have insurance (Exhibit 4F).  In
October 2013, the claimant indicated that he had not refilled his
Effient because it cost $280 per month and he has no insurance
(Exhibits 6F and 8F [Tr. 558]).  At that time, Ms. Wright advised
him to apply for patient assistance for Effient (Exhibits 6F and 8F).
In April 2014, the claimant told Dr. Anderson that he had been
without Effient for a month because he ran out of his medication and
could not afford them, and Dr. Anderson discussed in depth with the
claimant the need for him "to re-establish himself with charity care to
which he states he has been on for several months following his MI"
(Exhibit 8F) [Tr. 554, 557].  In fact, the claimant reported that his last
medication refills had come from the program.

The record also shows large gaps in treatment during the period at
issue.  For example, in October 2012, the claimant stated that he
had no seen a primary care provider since 2006.  In addition, there
is no evidence of treatment from October 2012 until August 2013,
and no treatment after April 2014 (Exhibits 3F and 4F).   To the
extent that the claimant alleges a lack of finances and/or insurance
as the reason for not seeking treatment or for not taking his
medications as prescribed, I find that there is no evidence to show
that he sought out and/or was denied access to no-cost or low-cost
healthcare.   In fact, the record shows that Ms. Wright and
Dr. Anderson both advised the claimant of options for obtaining his
medications including "re-establishing" himself with charity care,
which he stated that he had done.

The claimant has reported activities of daily living including preparing
meals, bathing, cleaning the house a little, reading, watching
television, shopping for food and medications, talking on the phone,
doing stuff around the yard, washing dishes, doing laundry (Exhibit
7E and hearing testimony [Tr. 66]).  The claimant does not drive
because his license is suspended, not because of an inability to do
so [Tr. 60, 63-64].  These activities and abilities are consistent with
my determination that the claimant can perform a range of light
exertional work.[12]  See 20 CFR 404.1529(c)(3)(i) and
416.929(c)(3)(i).

---

12  The ALJ may consider a claimant's daily activities when evaluating subjective
complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009,

I also find it significant that the claimant told Dr. Greenberg that he began experiencing shortness of breath on exertion several years earlier despite never having smoked (Exhibit 3F) [Tr. 396]. However, all the remainder of his treatment records indicate that he had a history of smoking with ongoing tobacco use despite his treating providers' advice to stop (Exhibits 3F, 4F, 6F, 7F, and 8F). The claimant testified that he has looked for work since July 2012, but no one would hire him [Tr. 61]. In addition, he reported doing odd jobs for his neighbors, who pay him. These factors weigh against the claimant's overall credibility with regard to his alleged disability. *See* 20 CFR 404.1592(c)(3)(vii) and 416.929(c)(3)(vii).

I give little weight to the third-party statements of the claimant's neighbors (Exhibits 21E-24E) [Tr. 391-94] for the same reasons as the claimant was found not fully credible including a lack of objective medical evidence to support his allegations, sporadic treatment, and the efficacy of his treatment regimen.

With regard to the medical opinions of record, I note that treating source opinions may be entitled to controlling weight (20 CFR 404.1527(d)(2), 416.927(d)(2), and SSR 96-2p) if the opinion as to the nature and severity of the impairment is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence of record. *In this case, there are no treating physician opinions in the record.* Thus, I find it significant that none of the claimant's treating physicians opined that he is disabled or has limitations equivalent to an inability to perform work activity for a period of at least 12 months.

I considered the consultative examination of Dr. Greenberg [of July 18, 2012], which was conducted in conjunction with the claimant's prior application of benefits (Exhibit 2F) [Tr. 396-400], as well as his

---

1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i). *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability). Although the ALJ did not expressly refer to the three-part pain standard set forth in Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 35, indicate that the pain standard was applied. Wilson, 284 F.3d at 1226.

subsequent medical source statement (Exhibit 10F) [Tr. 568-70 (Jan. 13, 2016)][13]  I have not assigned significant weight to this opinion as the assessed limitations are far in excess of the objective medical findings of Dr. Greenberg, and they are also inconsistent with the fairly benign examination findings of Dr. Adhami at the most recent consultative examination (Exhibit 7F) [Tr. 549-53 (Jan. 24, 2014)].

I give great weight to the opinions of the State agency medical consultants that the claimant can perform a limited range of light work activity (Exhibits 1A, 2A, 7A, and 8A).  These opinions are consistent with the claimant's history of coronary artery disease with myocardial infarctions and multiple stent placement, with no current cardiovascular complaints, and with good energy; with his history of low back pain and right knee pain with only mild to moderate degenerative changes on imaging scans and with generally normal strength, sensation, and gait without the use of an assistive; with the claimant's sporadic treatment history; and with the efficacy of the claimant's treatment regimen.

After considering the evidence of record as a whole, I find that the claimant can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting/carrying up to 10 pounds

---

13 Further, Dr. Greenberg's January 13, 2016, RFC evaluation, Exhibit 10F, is, for the for most part, a series of checkbox notations, Tr. 568-70, (but see notation on Tr. 570 regarding ROM and pain and palpation), which courts have found are "not particularly informative" and are "weak evidence at best."  See Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); see also Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory").  Dr. Greenberg did not provide an acceptable explanation for his opinions or refer to objective medical evidence to support his opinions.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004).

frequently and 20 pounds occasionally; sitting about six hours in an eight-hour workday; standing and walking about six hours each in an eight-hour workday; no more than frequent climbing of ramps and stair and balancing; no more than occasional stooping, kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds; and no concentrated exposure to extreme cold or hazards (machinery, heights, etc.).

Tr. 40-44.

Dr. Adhami's range of motion (ROM) findings stand in stark contrast to those of Dr. Greenberg.[14]  For example, Dr. Greenberg recorded rather low ROM for LUMBAR SPINE forward, extension, and lateral flexion; HIP flexion, extension, abduction, adduction, internal and external rotation and for KNEE flexion with all other ROM normal.  Tr. 398-400.  Whereas, for Dr. Adhami, approximately 1½ years later, Plaintiff had normal ROM tests.  Tr. 551-53.  Dr. Adhami noted muscle strength at 5/5 in all muscles, including grip strength of both hands; no muscle atrophy; no abnormal

---

[14]  Dr. Greenberg's conclusions of disability would not be entitled to any special weight or deference, however.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.  Further, to the extent Dr. Greenberg opined Plaintiff could not work, that was not a medical opinion and was not entitled to any special significance.  20 C.F.R. § 404.1527(d)."  Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *9 n.1 (11th Cir. Jan. 30, 2018).

movement like spasticity, rigidity, tremor, etc. Plaintiff's joints were "free in movement, without signs of inflammation or fluid. Plaintiff reported back pain "in deep flexion and extension." There was "mild scoliosis and mild muscle symmetry." Tr. 550. Plaintiff reported severe pain regarding his left knee, but no crepitation and he had full ROM and no swelling. Regarding his gait, Plaintiff's "walk is normal" and his ability to "walk on toes and heels is normal." *Id.* His diagnoses included coronary artery disease with two stents; no current chest pains; ventricular function was preserved per records; mild scoliosis of his back and mild degenerative disease, but no radiculopathy. *Id.* Finally, Dr. Adhami noted Plaintiff reported severe pain regarding his left knee, "but negative examination; if questions arise, x-rays may be indicated." Obesity was also mentioned. *Id.*

The ALJ further noted:

> The claimant testified that, when he went to the consultative examination with Dr. Greenberg in 2012, Dr. Greenberg spent about 45-60 minutes with him and examined his back, knee, and blood pressure. He indicated that, when he raised his legs during that examination, his left leg hurt "real bad" causing him to scream and cry. The claimant stated that bending over did not cause him pain at that time. He indicated that he had pain in his back every day, and during the period from 2012 to 2014, he rated his daily back pain as a 6 out of 10 with exacerbations of 7-8.

Tr. 39. The ALJ continued this discussion:

> The claimant stated that he also had daily leg pain during that period, which he rated the same as his back. He indicated that

he went to the Shands emergency room in late 2012 because he was having sharp pains in his chest and left arm. After he was released, he had a heart attack the next night, and he had stents put in. The claimant indicated that, after they put the stents in, he did not return to work. He was still having back pain and knee pain at that time. In 2013, he went to the emergency room at Shands because he fell while walking. He indicated that they examined him, gave him ibuprofen, and sent him home. The claimant stated that he was advised to walk daily after his stent placement, and he fell about 10 times while walking during the period from 2012 to summer 2015. After they put the stent in, his energy level was good. At that time, he was able to walk a block before he started hurting in his lower back. For the period from 2012 to 2014, he thought he could sit for 30 minutes before his legs started hurting or felt like they were going to sleep. For the period from 2012 to 2014, he felt that he could stand 45 minutes before needing to sit down due to back pain and leg pain. Since July 12, 2012, his activities of daily living include cleaning up the house, doing stuff around the yard, washing dishes, doing the laundry, and trying to keep the house clean. He stated that he had not consumed alcohol, used illegal drugs, or been attested since July 12, 2012.

Tr. 40.

The ALJ discussed Plaintiff's medical history and the objective findings that support the RFC determination. Regarding Plaintiff's back and knee pain, the ALJ considered that although Plaintiff had decreased leg strength and positive straight leg raising during Dr. Greenberg's examination, Tr. 397, Plaintiff's other examination showed normal strength in all extremities with negative straight leg raising. *See, e.g.*, Tr. 41, 425, 437-38, 448, 454, 481, 491, 509, 550. The ALJ considered that Plaintiff most often had a normal gait, and no examiner, including Dr. Greenberg,

observed Plaintiff needed an assistive device, although Plaintiff testified he used a cane, but also stated that no doctor prescribed the cane.  Tr. 41-42, 60, 397, 491, 550.  The ALJ also noted that although Plaintiff had decreased ROM in his back and knees at times, Tr. 396, at other visits, he had full ROM, and his sensation was consistently normal.  Tr. 41, 404, 407, 425, 442, 448, 454, 481, 491, 499, 545, 550.  The ALJ considered an x-ray of Plaintiff's left knee that showed mild degenerative changes and an x-ray of the lumbar spine that showed mild-to-moderate degenerative changes and mild disc space narrowing at T12-L1.  Tr. 41, 395, 410.  Plaintiff denied back pain, gait problem, musculoskeletal joint pain, and myalgias to healthcare providers in August and October 2013.  Tr. 41, 437, 496, 505, 545.  In April 2014, a neurological examination revealed no focal findings or a movement disorder and examination of the extremities revealed no edema, redness, or tenderness in the caves or thighs.  Tr. 41, 555, 559.

As noted above, the ALJ also considered Dr. Adhami's January 2014 consultative examination of Plaintiff that was generally unremarkable, Tr. 38, 43, 549-50, in contrast to some of Dr. Greenberg's findings including Plaintiff having problems with hip, lumbar, and knee ROM.  Tr. 399. (Dr. Adhami found to the contrary.  Tr. 551-53.)  The ALJ noted that on examination (with Dr. Adhami), Plaintiff had relatively normal findings.

Tr. 38, 550.

The ALJ further considered Plaintiff's reported daily activities that are consistent his ability to form a range of light work.  *See* Tr. 37, 43, 60, 65-66, 317-19, 430; *see also supra* at n.12.

The ALJ's RFC determination is also supported by the opinions of State agency consultants Lise Mungul, M.D., and Girija Padmanabh, M.D., M.P.H., who opined Plaintiff could perform a range of light work.  Tr. 43, 87-88 (Feb. 20, 2014), 111-14 (May 20, 2014); *see supra* at n.11.

Plaintiff's argument that Dr. Greenberg's RFC evaluation regarding his abilities, Tr. 568-70, and his neighbors' statements, Tr. 391-94, that he has an RFC for less than sedentary work, is not persuasive.  The ALJ considered Dr. Greenberg's evaluation and the lay witnesses' opinions, but gave them little weight.  Tr. 43.

Substantial evidence supports the weight the ALJ gave to Dr. Greenberg's opinion that identifies significant sitting, standing, and lifting limitations that would limit Plaintiff to less than a range of sedentary work.[15]  Tr. 568-70.  As a one-time examiner, Dr. Greenberg's opinion was

---

[15]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools."  20 C.F.R. § 404.1567(a).  "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*

not entitled to any special deference.  *See* Crawford v. Comm'r of Soc.

Sec., 363 F.3d1155, 1160 (11th Cir. 2004).  The ALJ considered

Dr. Greenberg's examination findings, Tr. 41, 396-400, 568-70, and

compared them to subsequent examinations, including Dr. Adhami's

evaluation that showed Plaintiff had full ROM in the back and knee.  Tr. 41,

404, 407, 425, 442, 448, 454, 481, 491, 499, 509, 545, 550.  The ALJ also

noted that even Dr. Greenberg indicated Plaintiff did not need an assistive

device and found no reflex or sensory abnormalities and normal grip

strength.  Tr. 36, 397.  Substantial evidence supports the ALJ's

assessment of Dr. Greenberg's opinion.

Substantial evidence also supports the little weight the ALJ gave to

the statements from Plaintiff's neighbors that Plaintiff had difficulty walking.

Tr. 43, 391-94.  Although an ALJ "may" use evidence from neighbors about

a claimant's impairment and how it affects his ability to work, *see, e.g.,* 20

C.F.R. § 404.1513(d)(4), ALJ owes no deference to sources who are not

medical doctors.  *See* Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998).

The ALJ explained he gave the neighbors' statements little weight for the

same reasons he provided for finding Plaintiff's subjective allegations not

entirely credible, including the lack of objective medical evidence to support

the allegations, sporadic treatment, and the efficiency of Plaintiff's

treatment regimen.  Tr. 43, 404, 407, 425, 448, 454, 481, 491, 499, 545.

As here, an ALJ considers testimony of a claimant's third-party

witness in accordance with SSR 06-3p, SSR LEXIS 5 (Aug. 9, 2006).  SSR

06-3p, clarified how SSA considers opinions from sources who are not

what the agency terms "acceptable medical sources."  The SSA separates

information sources into two main groups: "acceptable medical sources"

and "other sources."  It then divides "other sources" into two groups:

medical sources and non-medical sources.  20 C.F.R. § 404.1502.

Acceptable medical sources include licensed physicians (medical or

osteopathic doctors) and licensed or certified psychologists.  20 C.F.R.

§ 404.1513(a)(1)-(5).  In the category of "other sources," "medical sources"

include nurse-practitioners, physician's assistants, naturopaths,

chiropractors, audiologists, and therapists.  "Non-medical sources" include

school teachers and counselors, public and private social welfare agency

personnel, spouses, parents and other caregivers, siblings, other relatives,

friends, neighbors, clergy, and employers.  20 C.F.R. § 404.1513(d)(2)-(4).

"Information from these 'other sources' cannot establish the existence of a

medically determinable impairment," according to SSR 06-3p.  Sloan v.

Astrue, 499 F.3d 883, 888 (8th Cir. 2007).  "Instead, there must be

evidence from an 'acceptable medical source' for this purpose.  However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.* quoting SSR 06-3p, 2006 SSR LEXIS 5, at *5.

Moreover, the ALJ concluded that Plaintiff's obesity was a severe impairment, Tr. 34, and considered the effects of Plaintiff's obesity as part of the RFC determination and according to SSR 02-1p, 2002 SSR LEXIS 1 (Sept. 12, 2002).[16]  Tr. 34, 41.  As noted above, the ALJ observed that musculoskeletal examinations generally had been normal with the exception of some pain and decreased ROM in the spine and left knee. Tr. 41.  The ALJ also noted that on examination Plaintiff's strength and sensation were normal with no evidence of muscle atrophy.  Tr. 41, 550. The ALJ concluded: "Therefore, the medical evidence shows that the claimant's limitations resulting from his obesity would only prevent him from doing more than the range of light exertional work activity set forth in the claimant's [RFC] determination."  Tr. 41.

---

[16]  SSR 02-01p stands for the proposition that because a claimant's weight fell within the applicable definition of obesity, obesity should be considered, among other impairments, because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments.  *Id.*

Contrary to Plaintiff's argument, the ALJ considered his capability to work on a sustained basis when determining the RFC.  ECF No. 16 at 16, 26.  In assessing Plaintiff's RFC, the ALJ was required to consider his physical and mental abilities "on a regular and continuing basis."  20 C.F.R. § 404.1545(b).  A "regular and continuing basis" means "8 hours a day, 5 days a week, or an equivalent work schedule."  Kelley v. Apfel, 185 F.3d 1211, 1214 (11th Cir. 1999).  There is no indication in the ALJ's decision that the RFC findings did not consider Plaintiff's ability to work on a regular and continuing basis as required by the regulations.  In fact, the ALJ, citing SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996), noted that an individual's RFC "is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments."  Tr. 34.

Finally, Plaintiff also discusses the application of the Medical-Vocational Guidelines, the Grids.  Plaintiff argues that if the ALJ had limited Plaintiff to sedentary work, Grid Rule 201.12, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.12, would have directed a finding of disabled.  ECF No. 16 at 8-18.  Substantial evidence supports the ALJ's and Appeals Council's consideration of the applicable Grid Rules*, see, e.g.*, Tr. 14, 45, and the Appeals Council's determination that Plaintiff could perform a reduced range of light work.  Tr. 14; *see* Tr. 35.  Although the Appeals

Council disagreed with the ALJ's decision as to when Plaintiff's age category changed, the Appeals Council adopted the ALJ's finding and analysis as to why Plaintiff could perform other representative work in the national economy.  *Id.*

Substantial evidence supports the ALJ's consideration of the medical evidence of record, including Dr. Greenberg's opinion.  The ALJ explained her rejection of Dr. Greenberg's ultimate opinion that Plaintiff cannot do even sedentary work.  Tr. 43.  Aside from his opinion, no other physician opined that Plaintiff's impairments are of such severity as to preclude him from working in any capacity.  On the other hand, Dr. Adhami's consultative examination, and other considered evidence, support the ALJ's finding Plaintiff could perform a reduced range of light work with exceptions.

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim.  *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211; Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly.  *See* Watson v. Heckler, 738 F. 2d 1169, 1172 (11th Cir. 1984).  Even if this Court disagrees with the ALJ's resolution of the factual issues and would

resolve the disputed factual issues differently, the decision must be affirmed where, as here, if supported by substantial evidence in the record as a whole.  *See* Martin v Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). Substantial evidence supports the Appeals Council's ultimate decision that Plaintiff was not disabled prior to August 15, 2015, but became disabled thereafter.

## V.  Conclusion

Considering the record as a whole, the ALJ's findings, as adopted, supplemented, or changed by the Appeals Council, are based upon substantial evidence in the record and the ALJ and the Appeals Council correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on March 14, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed.**

R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.